## IN RE PALLISER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 1538.   Argued May 1, 1890.— Decided May 19, 1890.

A sale by a postmaster of postage stamps on credit is a violation of the act
of June 17, 1878, c. 259, § 1, forbidding him to " sell or dispose of them
except for cash."

Sending a letter to a postmaster, asking him whether, if the writer of the
letter will send him five thousand circulars in addressed envelopes, he
will put postage stamps on them and send them out at the rate of one
hundred daily, and promising him, if he will do so, to pay to him the price
of the stamps, is a tender of a contract for the payment of money to the
postmaster, with intent to induce him to sell postage stamps on credit,
and in violation of his duty, and is punishable under § 5451 of the Revised
Statutes.

The offence of tendering a contract for the payment of money in a letter
mailed in one district and addressed to a public officer in another, to
induce him to violate his official duty, may be tried in the district in
which the letter is received by the officer.

CHARLES PALLISER, being detained by the United States mar-
shal for the Southern District of New York, under a warrant
from a commissioner of the Circuit Court of the United States
for that district, obtained from that court a writ of *habeas
corpus*, as well as a writ of *certiorari*, to the marshal and com-
missioner, both returnable at a stated term of the court, in
obedience to which the commissioner returned a record of pro-
ceedings had before him under § 1014 of the Revised Statutes,
which enacts that "for any crime or offence against the
United States the offender may," by any commissioner of the
Circuit Court, " be arrested and imprisoned, or bailed, as the
case may be, for trial before such court of the United States
as by law has cognizance of the offence ; " and that where any
offender " is committed in any district other than that where
the offence is to be tried," a warrant may be issued by the
District Judge and executed by the marshal of that district,
" for his removal to the district where the trial is to be had."
The proceedings stated in the return were as follows:

First.   The complaint, of which the following is a copy :

" United States of America, Southern District of New York, ss. John H. Bario, being duly sworn, deposes and says that he is an inspector of the Post Office Department; that on October 23d, 1888, Charles Palliser of the city and State of New York, then and there doing business under the name and style of Palliser, Palliser & Co., at Old Lyme, in the county of New London, in the State and District of Connecticut, with force and arms unlawfully and wilfully did tender to one W. R. De Wolf, who then and there was and thereafter continued to be until the 4th day of March, 1889, a postmaster of the United States at a certain post office known as Black Hall, in said county of New London, a certain contract in the words and figures following:

'New York, October 23, 1888.

'Postmaster, Black Hall, Conn.

'Dear Sir: We desire in each county a place through which to send out mail matter, as we want to reach every business man, mechanic and real-estate owner in every State by circular. If we ship to you from our printing department, located in the country in your State, say 5000 or 10,000 circulars in envelopes, and each addressed, will you give the same your careful attention, sending out daily 50 to 100 during the coming months until they are all out, and then render us statement of same, with account for stamps used, and we will remit. We are doing this at other general store post-offices in adjoining counties to yours, and it is perfectly legitimate, and we await your reply in addressed and stamped envelope enclosed herewith, as, if you cannot attend to same, we must at once send elsewhere.

'Yours very truly,

'PALLISER, PALLISER & Co.'

with the intent of him, the said Palliser, to induce him, the said De Wolf, as such postmaster, to do certain acts in violation of his lawful duty as such postmaster — that is to say, to sell him, the said Palliser, postage stamps of the United States otherwise than for cash, to wit, upon the credit of said Palliser, against the peace of the United States and contrary

to the statutes thereof in such case made and provided. Deponent further says that said Charles Palliser is now within the Southern District of New York.

"JOHN H. BARIO.

"Subscribed and sworn to before me this 27th day of September, 1889.

"JOHN A. SHIELDS, U. S. Commissioner."

Second. The warrant of arrest, dated September 27, 1889, reciting the substance of the complaint, and that it had been satisfactorily proved to the commissioner "that the said Charles Palliser is now within the Southern District of New York."

Third. The bringing of the prisoner before the commissioner, and his discharge on bail pending his examination.

Fourth. The evidence taken before the commissioner, tending to prove the following facts: Palliser was a member of the firm of Palliser, Palliser & Co., architects and publishers of works on building, having their principal place of business in the city of New York, and a printing-office at Bridgeport in the State of Connecticut. The letter set forth in the complaint was signed and mailed by Palliser at New York in a sealed envelope; and was received at Black Hall in the county of New London and State of Connecticut by De Wolf, postmaster at that place, who was a postmaster of the fourth class, receiving no salary, and compensated upon the basis of, among other things, the amount of stamps cancelled at his office. Act of March 3, 1883, c. 142, § 2, 22 Stat. 602. At the same time, Palliser sent similar letters from New York or Bridgeport to many other postmasters of the same class in Connecticut. About a fortnight afterwards, De Wolf received by freight a box of circulars; and on November 26, 1888, he sent by mail to Palliser, Palliser & Co., at the city of New York a reply to their letter in these words: "Gentlemen: Have received a case of circulars from you, which I did not order, as cannot handle them. They are here subject to your order. Take notice of sec. 515 of postal laws and regulations, 1887.

"Yours, etc.,

"W. R. DE WOLF, P. M."

Fifth. An order of the commissioner, dated November 26, 1889, committing the prisoner, upon his surrender by his bail, to the custody of the marshal.

Sixth. The final order of the commissioner, dated December 3, 1889, by which, after reciting the arrest and examination, and "it-appearing to me from the testimony offered that there is probable cause to believe the said Charles Palliser guilty of the offence charged in said warrant, the said Charles Palliser is hereby committed for trial at the District of Connecticut, the district in which the offence is alleged to have been committed, and he is hereby remanded to the custody of the United States marshal for the Southern District of New York until the warrant for his removal shall issue by the United States District Judge for the Southern District of New York, or he be otherwise dealt with according to law."

The record transmitted to this court, after setting forth the proceedings above stated, further set forth: 1st. An opinion of the Circuit Judge, filed December 3, 1889, treating the case as before him, and not before the Circuit Court, and directing the writ of *habeas corpus* to be dismissed; 2d. An order of the Circuit Court, at a stated term held on the same day, ordering the writ of *habeas corpus* to be dismissed and the prisoner remanded to the custody of the marshal; 3d. An appeal from that order to this court.

*Mr. Roger Foster* for the petitioner.

I. The sending of the letter described in the complaint did not constitute a crime, even if it were unlawful for the postmasters to sell postage stamps upon credit.

(1) The circular contains no offer upon the part of Mr. Palliser to send the circulars in case the postmasters should agree to sell the stamps for them on credit.

(2) The request of a public officer to aid the party making the request in the performance of an act in violation of such officer's duty, through which each will make a profit, is not the offer of a bribe. For the principles for construing such statutes see *Harding* v. *Stokes*, 1 M. & W. 354; *People* v. *Smith*, 28 Hun, 626; *People* v. *Emerson*, 6 Conn. Crim. Rep. (N. Y.)

157; *Dunn* v. *People*, 29 N. Y. 523; *Commonwealth* v. *Willard*, 22 Pick. 476; *State* v. *Hopkins*, 4 Jones N. C. 305; *Rawles* v. *State*, 15 Texas, 581; *Stabler* v. *Commonwealth*, 95 Penn. St. 318; *Stampler* v. *Commonwealth*, 7 Bush, 612.

II. The sale of postage stamps upon credit is not a violation of a postmaster's official duty. The government is amply protected by his bond. Rev. Stat. § 3834. This is a penal statute and must be construed strictly. See *The Enterprise*, 1 Paine, 32; *Commonwealth* v. *Standard Oil Co.*, 101 Penn. St. 119; *Commonwealth* v. *Martin*, 17 Mass. 359; *United States* v. *Sheldon*, 2 Wheat. 119; *United States* v. *Reese*, 92 U. S. 214; *Henderson* v. *Bise*, 3 Starkie, 158; *Wells* v. *Porter*, 2 Bing. N. C. 722: *Thomas* v. *Stevenson*, 2. El. & Bl. 108; *Coe* v. *Lawrance*, 1. El. & Bl. 516; *Broadhead* v. *Holdsworth*, 2 Ex. D. 321; *Southwestern Railroad Co.* v. *Cohen*, 49 Georgia, 627; *St. Louis Type Foundry* v. *Union Printing Co.*, 3 Missouri App. 142; *Hoffman* v. *John Hancock Ins. Co.*, 92 U. S. 161; *United States* v. *Williamson*, 26 Fed. Rep. 690; *United States* v. *Douglass*, 33 Fed. Rep. 381.

III. The District Court of Connecticut has no jurisdiction to try Mr. Palliser for the offence charged against him. *United States* v. *Guiteau*, 1 Mackey, 498. The offence was complete when the letter was mailed. The fact that the person to whom it was addressed lived in Connecticut makes no difference. Mr. Palliser has a constitutional right to a trial in the Southern District of New York, where he resides and is known.

The Sixth Amendment to the Constitution is as follows: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and District wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence." This amendment is to be construed liberally in view of its history and the rights which it is designed to protect. *Boyd* v. *United States*, 116 U. S. 616.

It is supplementary to a clause of the Constitution as originally ratified in section 2 of Article III. "The trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the State where the said crime shall have been committed."

These constitutional provisions cannot be nullified by any statute of the United States. Consequently, if section 731 of the Revised Statutes conflicts with them, it is unconstitutional and void.

But that statute does not cover the case at bar. Mr. Palliser's alleged crime was complete when the letter was mailed in New York. *United States* v. *Worrall*, 2 Dall. 384; *United States* v. *Bickford*, 4 Blatchford, 337; *United States* v. *Plympton*, 4 Cranch C. C. 309; *Dana's Case*, 7 Benedict, 1; *United States* v. *Comerford*, 25 Fed. Rep. 902; *State* v. *Bunker*, 38 Kansas, 737; *United States* v. *Britton*, 2 Mason, 464; *Ripley* v. *State*, 9 Humphrey, 646.

*Mr. Solicitor General* opposing.

Mr. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

Upon the record before us, the final order dismissing the writ of *habeas corpus*, and remanding the prisoner to the custody of the marshal, appears to have been a decision of the Circuit Court at a stated term, and therefore clearly subject to an appeal to this court, under the act of March 3, 1885, c. 353. 23 Stat. 437; *Carper* v. *Fitzgerald*, 121 U. S. 87.

But he was rightly remanded to custody, because the return shows that he was charged with a crime against the laws of the United States and within the jurisdiction of the courts of the United States for the District of Connecticut.

By section 5451 of the Revised Statutes, "every person who promises, offers or gives, or causes or procures to be promised, offered or given, any money or other thing of value, or makes or tenders any contract, undertaking, obligation, gratuity or security for the payment of money, or for the delivery or conveyance of anything of value to any officer of the United

States," "with intent to influence him to commit or aid in committing, or to collude in or allow any fraud, or make opportunity for the commission of any fraud on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be punished" by fine and imprisonment.

By the act of June 17, 1878, c. 259, § 1, "no postmaster of any class, or other person connected with the postal service, entrusted with the sale or custody of postage stamps, stamped envelopes or postal cards, shall use or dispose of them in the payment of debts or in the purchase of merchandise or other salable articles, or pledge or hypothecate the same, or sell or dispose of them except for cash," on pain of being deemed guilty of a misdemeanor and punished accordingly. 20 Stat. 141.

By this statute, postmasters are peremptorily forbidden, not only to dispose of postage stamps in the payment of debts or in the purchase of commodities, or to pledge them, but to "sell, or dispose of them except for cash." The word "cash" in this statute, as in common speech, means ready money, or money in hand, either in current coin or other legal tender, or in bank bills or checks paid and received as money, and does not include promises to pay money in the future. A sale on credit is not, ordinarily speaking, and in the absence of any evidence of usage, a sale for cash, within the meaning of that word as used in statutes or contracts. *Muller* v. *Norton*, 132 U. S. 501; *Bliss* v. *Arnold*, 8 Vermont, 252; *Steward* v. *Scudder*, 4 Zabriskie, 96; *Foley* v. *Mason*, 6 Maryland, 37; *Blair* v. *Wilson*, 28 Grattan, 165, 175.; *Farr* v. *Sims*, Rich. Eq. Cas. 122, 131; *Meng* v. *Houser*, 13 Rich. Eq. 210, 213.

The petitioner relies on the following passage in an opinion delivered by Mr. Justice Swayne: "Life insurance is a cash business. Its disbursements are all in money, and its receipts must necessarily be in the same medium. This is the universal usage and rule of all such companies." *Hoffman* v. *Hancock Ins. Co.*, 92 U. S. 161, 164. But the only point decided in that case was that an agent of an insurance company could not, unless authorized by the company, accept personal property as

money in payment of a premium; no question arose or was considered as to the premium note; and it cannot reasonably be inferred that the learned justice meant to intimate that a premium note was cash or money, before the amount thereof was paid by the insured and received by the insurance company, according to the terms of their contracts.

The substance and effect of the letter written and sent by the petitioner, in behalf of himself and his partners, to De Wolf as postmaster, was to ask him whether, if they should send him from five to ten thousand circulars in addressed envelopes, he would put postage stamps on them and send them out, at the rate of fifty to one hundred daily; and to promise him that, if he would do so, and would render them a statement of his doings and an account of the stamps used, they would remit to him the price of the stamps. If we take five thousand, the smallest number of circulars proposed to be sent by the petitioner to the postmaster, and one hundred, the largest number suggested to be sent out by the postmaster daily, it would require fifty days for the postmaster to send out the circulars; and the petitioner would thus be allowed an average credit of at least twenty-five days on his payments to the postmaster for five thousand postage stamps; and the postmaster would receive and retain a commission on the sale of as many stamps, which neither he nor any other postmaster would retain if the circulars were mailed by the petitioner at the post-office in New York or any other post-office where the postmaster was paid by a salary.

If this letter was not an offer of money to the postmaster, it was clearly a tender of a contract for the payment of money to him, with intent to induce him to sell postage stamps for credit, in violation of his lawful duty; and therefore came within § 5451 of the Revised Statutes, above quoted. A promise to a public officer, that if he will do a certain unlawful act he shall be paid a certain compensation, is an offer to bribe him to do the unlawful act; and an offer of a contract to pay money to a postmaster for an unlawful sale by him of postage stamps on credit is not the less within the statute, because the portion of that money which he would

ultimately have the right to retain, by way of commission, from the United States, would be no greater than he would have upon a lawful sale for cash of an equal amount of postage stamps.

The remaining and more interesting question is whether the petitioner can be tried for this offence in the District of Connecticut.

The petitioner relies on those provisions of the Constitution of the United States which declare that in all criminal prosecutions the accused shall have the right to be tried by an impartial jury of the State and District wherein the crime shall have been committed. Art. 3, sect. 2; Amendments, Art. 6.

But the right thereby secured is not a right to be tried in the district where the accused resides, or even in the district in which he is personally at the time of committing the crime, but in the district "wherein the crime shall have been committed."

Reference was made in argument to the question, often disputed, Where an indictment for murder shall be tried, when a person mortally wounded in one jurisdiction afterwards dies in another jurisdiction? See *Commonwealth* v. *Macloon*, 101 Mass. 1, and authorities there cited; *The Queen* v. *Keyn*, 2 Ex. D. 63; 11 Amer. Law Rev. 625; *State* v. *Bowen*, 16 Kansas, 475; *United States* v. *Guiteau*, 1 Mackey, 498. But there the original unlawful act is not only done by the offender, but reaches the person at whom it is aimed, in one jurisdiction; and it is the subsequent effect only which takes place in another jurisdiction. We have no occasion now to consider such a case, beyond observing that before the Declaration of Independence provision had been made by statute, both in England and in Ireland, for trying such cases in either jurisdiction, and was never supposed to be inconsistent in principle with the provision of Magna Charta, c. 14, for trial by a jury of the vicinage. 1 East P. C. 366; 1 Gabbett's Crim. Law, 501. It is universally admitted that when a shot fired in one jurisdiction strikes a person in another jurisdiction, the offender may be tried where the shot takes effect, and the only doubt is whether he can be tried

where the shot is fired. *Rex* v. *Coombes*, 1 Leach, (4th ed.) 388; *United States* v. *Davis*, 2 Sumner, 482; *People* v. *Adams*, 3 Denio, 190, 207, and 1 N. Y. 173, 176, 179; Cockburn, C. J., in *The Queen* v. *Keyn*, 2 Ex. D. 233, 234.

When a crime is committed partly in one district and partly in another, it must, in order to prevent an absolute failure of justice, be tried in either district, or in that one which the legislature may designate; and Congress has accordingly provided that "when any offence against the United States is begun in one judicial district and completed in any other, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined and punished in either district, in the same manner and as if it had been actually and wholly committed therein." Rev. Stat. § 731.

When an offence is committed by means of a communication through the post-office, the sender has sometimes, as appears by the cases cited for the petitioner, been held to be punishable at the place where he mails the letter. *United States* v. *Worrall*, 2 Dall. 384; *United States* v. *Bickford*, 4 Blatchford, 337; *Rex* v. *Williams*, 2 Campbell, 506; *The King* v. *Burdett*, 3 B. & Ald. 717, and 4 B. & Ald. 95; *Perkin's Case*, 2 Lewin, 150; *Regina* v. *Cooke*, 1 Fost. & Finl. 64; *The Queen* v. *Holmes*, 12 Q. B. D. 23; *S. C.* 15 Cox Crim. Cas. 343. But it does not follow that he is not punishable at the place where the letter is received by the person to whom it is addressed: and it is settled by an overwhelming weight of authority that he may be tried and punished at that place, whether the unlawfulness of the communication through the post-office consists in its being a threatening letter; *The King* v. *Girdwood*, 1 Leach, 142; *S. C.* 2 East P. C. 1120; *Esser's Case*, 2 East P. C. 1125; or a libel; *The King* v. *Johnson*, 7 East, 65; *S. C.* 3 J. P. Smith, 94; *The King* v. *Burdett*, 4 B. & Ald. 95, 136, 150, 170, 184; *Commonwealth* v. *Blanding*, 3 Pick. 304; *In re Buell*, 3 Dillon, 116, 122; or a false pretense or fraudulent representation; *Regina* v. *Leech*, Dearsly, 642; *S. C.* 7 Cox Crim. Cas. 100; *The Queen* v. *Rogers*, 3 Q. B. D. 28; *S. C.* 14 Cox Crim. Cas. 22; *Peo-*

*ple* v. *Rathbun,* 21 Wend. 509; *People* v. *Adams,* 3 Denio, 190, and 1 N. Y. 173; *Foute* v. *State,* 15 Lea (Tenn.) 712.

The only decision to the contrary, cited for the petitioner, is one in which the Circuit Court of the District of Columbia, upon the authority of a former case in the same court in which no opinion is reported, held that where a letter containing a forged check was put in the post-office at Baltimore, addressed to a person in Washington, there was no uttering of the forged paper in Washington. *United States* v. *Plympton,* 4 Cranch C. C. 309; citing *United States* v. *Wright,* 2 Cranch C. C. 296. In *Dana's Case,* 7 Ben. 1, a warrant to remove to the District of Columbia a person alleged to have printed a libel in a newspaper published in New York, and circulated by his authority in the District of Columbia, was refused by Mr. Justice Blatchford, then District Judge, not because the offence could not be punished in the District of Columbia, but because the law of that District provided for its prosecution by information only, and was therefore unconstitutional. In *United States* v. *Comerford,* 25 Fed. Rep. 902, an indictment on § 3893 of the Revised Statutes, for "knowingly depositing or causing to be deposited" in the post-office at New York a letter containing obscene matter in a sealed envelope addressed to a person in Texas, was quashed, not merely for want of jurisdiction in Texas, but because the court held that the act did not constitute an offence under that statute, in accord with the decision of this court at the present term in *United States* v. *Chase,* 135 U. S. 255.

In the case before us, the offence charged being an offer of money, or a tender of a contract for the payment of money, contained in a letter mailed in New York and addressed to a postmaster in Connecticut, to induce him to violate his official duty, it might admit of doubt whether any offence against the laws of the United States was committed until the offer or tender was known to the postmaster and might have influenced his mind. But there can be no doubt at all that, if any offence was committed in New York, the offence continued to be committed when the letter reached the postmaster in Connecticut; and that, if no offence was committed in New York,

an offence was committed in Connecticut; and that, in either aspect, the District Court of the United States for the District of Connecticut had jurisdiction of the charge against the petitioner. Whether he might have been indicted in New York is a question not presented by this appeal.

*Order affirmed.*