Spear, J.
The statute which the plaintiff in error, Hayner, was convicted of violating is the fourth section of the act passed March 12, 1909, entitled: “An act to amend and supplement section 5 of an act entitled, ‘An act providing against the evils resulting from the traffic in intoxicating liquors/ passed May 14, 1886, as amended March 28, 1906, and to further provide against the evils resulting from traffic in intoxicating liquors,” 100 O. L., 89. Section four provides as follows: “Any person, or persons, firm, or any officer of any corporation, who, directly or indirectly, after April 15, 1909, solicits orders for intoxicating liquor in any county or territory where the sale of such liquor as a beverage is prohibited shall be subject to a fine of not less than one hundred and fifty dollars nor more than four hundred dollars for the first offense, and for the second offense not less than four hundred dollars nor more than eight hundred dollars.”
The record shows that the soliciting charged was done by the mailing at Dayton, Montgomery county, Ohio, by the defendant, addressed to The J. B. Foote Foundry Company, Fredericktown, Knox county, Ohio, on October 11, 1909, of a certain letter, circular and post card, and that the same were received by the Foote Foundry Company, by due course of mail at Fredericktown, Knox county, Ohio. The letter reads as. follows:
*188 “Dayton, Ohio, October 9, 1909.
“The J. B. Foote Fdry. Co.,
“Fredericktown, Ohio:
“Dear Sir: That special ‘lock-stopper’ offer we wrote you about has created a sensation. We’ve never known anything to equal it. Orders are coming in a perfect flood from every state in the "Union. The response is so tremendous — so almost unanimous — that we are wondering why you, too, did not take advantage of it.
“The offer is still open and we urge you to send us your order now. We want to place some of this-magnificent whiskey before you. We want to. prove to you how rich, pure and delicious it is. We want to show you how much you save by our ‘direct from distillery’ plan of selling. We want you to have one of those handsome lock-stopper decanters we send with each order.
“You need not send us any money in advance. Just sign and mail us the enclosed order card and we will send you in plain sealed case express charges paid three quarts of Hayner private stock bottled-in-bond whiskey, and one quart of fine old W. S. K. straight whiskey, and we will include absolutely free Hayner’s.sideboard decanter with combination lock-stopper as described in the circular enclosed.
“When the goods arrive try the whiskey and examine the lock-stopper and decanter, and if you find them all we claim then remit us the price— $3.70. Otherwise you may return the goods at our expense and you will not be out one cent.
“The guarantee is clear and distinct. It means. *189 what it says. We must please you, we riiust send you a quality that will surpass your highest expectations, and we will do it. Put us to the test. Sign and mail the postcard to Mr. Kidder, manager at Dayton, and do it now while it is before you.
“Very sincerely,
“The Hayner Distilling Co.,
“W. M. Playner, President.”
The circular is directed particularly to setting forth the advantages of the lock-stopper decanter mentioned in the letter, and to depicting the high quality of certain brands of whiskey manufactured at the defendant’s distillery, and commending the goods to the consumer, as “absolutely pure,” “distilled from the choicest grain,” “of the most distinguished quality,” and “guaranteed under the United States pure food and drugs act,” the text ornamented with an attractive cut of the lock-stopper decanter; but the circular is mostly in fine type and too long for insertion here.
The postcard is as follows:
“Postcard. (Stamp.)
“This side for address only.
“W. S. Kidder, Dayton, Ohio.
“Dear Sir: You may send me by prepaid ex-, press the package as per your recent proposition. It is understood that if, after trying your product, I find that it is not as represented, I am privileged *190 to return balance by express at your expense. If the goods are as represented and I keep them I agree to remit $3.70. Remember, I bind myself only as above. .
“Name.......... Post office..........Express
“Office .......... State........If member of firm, give firm name.”
It is further shown by the record that, by force of the county local option law, the sale of intoxicating liquor as a beverage was prohibited in Knox county, Ohio, on and prior to October 11, 1909, and that Fredericktown, Ohio, is located within the boundaries of Knox county.
Upon this state of facts the question presented is whether or not an offense has been proven against the provisions of section four of the act, and whether, if such violation has been shown, the section itself is a valid law. The court has been favored by the learned counsel with very extended argument, for and against. Such argument usually invites to enlarged discussion, but it seems to us that the real, essential issues are comparatively simple, and do not require extended discussion on the part of the court, although it is' proper to briefly notice the points presented.
We assume that the act of soliciting may be done by letter as well as in person. The dictionary term “solicit” implies “an application to another for obtaining something.” It is the every-day experience of all of us that in other matters it is so done, and as there is no reason to presume that the general assembly used the word in any sense other *191 than the ordinary sense, we give that construction to the term. We suppose, also, that the letter was intended to take effect in the county of Knox. If it was so intended then we see no reason why the prosecution was not properly commenced in that county. We call attention to the following authorities, and pass this matter without further comment. In re Palliser, 136 U. S., 257; The King v. Girdwood, 1 Leach, 142; The King v. Johnson, 7 East, 65; Commonwealth v. Blanding, 3 Pick., 304; The People v. Rathbun, 21 Wend., 509; same v. Adams, 3 Denio, 190; Foute v. The State, 15 Tenn., 712; United States v. Thayer, 209 U. S., 39; Benson v. Henkel, 198 U. S., 1; Burton v. United States, 202 U. S., 344; Rose v. The State, 4 Ga. App., 588, 62 S. E. 117.
Many points of objection to the judgments below are urged by counsel for plaintiff in error. In the first place it is contended that the statute has not been violated because the sending of one letter only is involved in this transaction while the thing forbidden by the statute is the soliciting of orders, not the solicitation of an order. It would seem that our statute, section 6794, Revised Statutes, a statute intended to do away with mere technicalities, sufficiently answers this objection. Among other like provisions relating to other subjects it provides that “words in the present include the future tense, and in the masculine include the feminine and neuter genders, and in the singular include the plural, and in the plural include the singular number.” It appears clear that unless it is manifest, as it is not in this case, that more than one solicitation is necessarily required to bring *192 about the desired result, that is, a sale, that the statute is as well satisfied by one instance as it would be by a dozen. Authorities are abundant in support of this conclusion. We cite a few of the many: King v. Hassell, 1 Leach, 1; The State v. Main, 31 Conn., 572; Lynch v. The State, 12 O. C. C., N. S., 330, same, 81 Ohio St., 489; Belle Center v. Welsh, 24 W. L. B., 176.
It is further insisted that the statute cannot be violated unless the solicitation, if effectual, would result in an illegal sale, which could not be the result in the present case because the sale, if induced, would be made at Dayton, in the county of Montgomery, (wet territory), and not at Frederick-town, in the county of Knox, and the legislature is without authority to make solicitation of a legal sale an offense. But would the sale, if brought about, be made at Dayton? The letter specifies as an element of the solicitation, the condition that the purchaser need not send any money, but simply sign and mail the card, the terms of which authorize the shipment of the package on the condition that if the purchaser finds the product not as represented he is privileged to return balance by express at sender’s expense. Surely at this stage there is no contract of sale. But if the party solicited finds the goods as represented and he keeps them then he agrees to remit $3.70. That conclusion, and his consequent action thereon, would all be done in Knox 'county. Compliance with the condition by the purchaser would conclude a bargain, but at no stage prior to that could either party enforce any contract liability against the other. We understand the rule to be, as stated *193 in Benjamin on Sales, (5 ed.)/319, that: “Where the buyer is by the terms bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer.” Nor would there be delivery until the buyer had determined to accept, the rule being that an acceptance by the purchaser is as necessary an incident to delivery as a tender by the seller. See, generally, Bonham v. Hamilton, 66 Ohio St., 82. It is clear that, by reason of this principle, the general rule that the title to goods shipped passes to the buyer on delivery by the seller to a common carrier, has no application to this case, and that the sale, had one been induced, would have taken place' in Knox country, dry territory, and would therefore have been an illegal sale.
Nor does there seem to be support in reason, and certainly not in authority, for the proposition that the general assembly does not possess authority to forbid solicitation for orders for intoxicating liquor in dry territory, even though the sale might be had in wet territory. It would be a needless use of space to stop to set forth at length the main purpose of our temperance legislation, for the same has been given in detail in many previous decisions. We need but suggest here that one purpose is the removal and suppression of temptation to overindulgence on the part of a large class who are weak of will and likely to be controlled to their injury by the cravings of appetite. To accomplish this purpose it would seem *194 that legislation of the character in review, reasonable in .its provisions, would afford material aid in bringing about the condition of society which the general legislation on the subject of intoxicating liquors seeks to establish. And as to authority in support of this specific provision there seems to be abundance, and that of the highest character. We call special attention to the case of Delamater v. South Dakota, 205 U. S., 93. That is a liquor case wherein Delamater was charged with soliciting in South Dakota (dry territory), a contract for the sale of liquor by a concern of another state (wet territory), in violation of the statute of South Dakota forbidding such soliciting and punishing the same as a misdemeanor. The special defense interposed was that the act was repugnant to both the law of the United States respecting interstate commerce, and the commerce clause of the constitution, and the opinion is devoted largely to a discussion of that phase of the contention, but the general subject of the validity of the South Dakota act is also discussed. The holding is that the Dakota statute is not repugnant to the act of congress respecting' commerce, nor to the commerce clause of the federal constitution; that “the general powers of the states to control and regulate, within their borders, the business of dealing in, or soliciting orders for, the purchase of intoxicating liquors is beyond question;” and that “although a state may not forbid a resident therein from ordering for his own use intoxicating liquor from another state it may forbid the carrying on within its borders of the business of soliciting orders for such liquor although such orders may *195 only contemplate a contract resulting from acceptance in another state.” Attention is called to two Arkansas cases, which deserve notice. Carter v. The State, 81 Ark., 37, decided December 3, 1906, holds that, within the meaning of section 5133, Kirby’s Digest, making it unlawful for any person, firm, partnership, or corporation engaged in the sale of liquors to solicit orders for the sale of liquors in any place where the same is prohibited by law, an advertisement in a newspaper published in a prohibition district that' liquor may be obtained from a licensed liquor dealer doing business elsewhere, is not a solicitation. The validity of the act itself forbidding soliciting is not questioned. In the following year, to-wit, April 1, 1907, the statute was repealed and a new act of a more comprehensive character passed which is given construction in Zinn v. The State, 88 Ark., 273, the decision rendered November 30, 1908. The holding is: “A statute making it unlawful to solicit orders for intoxicating liquors in prohibition territory, through agents, circulars, posters, or newspaper advertisements, is a valid exercise of the state’s police power,” and “ * * * is not unconstitutional as infringing the power of Congress under U. S. Const., sub. 1, section 8, to establish postoffices and designating what shall be excluded from the mails.”
As the case at bar does not relate to the matter of advertising we are not called upon to discuss or consider that phase of the subject. Counsel for plaintiff in error cite State v. Wheat, 48 W. Va., 259, as sustaining their contention that soliciting in a dry county is not unlawful. The *196 question in that case involved construction of a license statute. Wheat was licensed as a wholesale liquor dealer in Ohio county. The solicitation was by circulars mailed in that county to persons in Brooke county. Some of the reasoning of the court seems to favor the claim of counsel, but as a whole the case rests on the effect to be given to the license, and to turn largely upon the situs of the solicited sales, the opinion holding: “The code says that if one has a sale license he may solicit orders, and it seems to me that such licensee may solicit custom anywhere as an incident to that license. It would seem immaterial that the law confines the licensee to business at a particular place or one county, since the solicitation and receipt of orders are not for sale and delivery in other counties, but for sales to be executed as consummated contracts at the place and in the county designated in the license; that is the place of sale.” On the whole, the decision does not afford much aid in disposing of the contention in the case at bar. Lewis v. The State, 58 Tex. Crim., 351, is also cited. An examination of this case shows that the resemblance to our case is too faint to afford light in disposing of any of the questions which we have, or indeed to justify a fuller statement of it.
It is further contended that the act is invalid because violative of the constitution in the imposition of excessive fines. The fines prescribed are larger than in many other sections of the liquor laws, but is it shown that punishment of less amount would prove effective? We think not. The answer of counsel for the state appears to *197 fully meet this objection. In substance it is that, as matter of common knowledge, the profit in the wholesale dealing in liquor is so great that a small fine would utterly fail to prove a deterrent, inasmuch as the dealers could easily afford to pay such fine and continue the soliciting of orders. The subject is clearly a matter of legislative discretion with which the courts should not interfere unless the punishment is so excessive as to amount to cruelty or confiscation, which clearly is not- the case here.
Further contention is made that the whole statute is unconstitutional, the first part as being a license law, and the fourth section- as being a general law not of uniform operation. It seems to us that it cannot be necessary at this late day to enter into a discussion as to whether our liquor taxing laws are license laws. The ground has been fully plowed and harrowed in many previous decisions. And section four does operate uniformly within the meaning given that requirement of the constitution as to general laws because the operation of the statute is the same in all parts of the state where the same circumstances and conditions exist. An act is not required to be of universal operation in order to be of uniform operation. To sustain this objection would be to overrule all the decisions of this court relating to local option. We regard the policy of the state in that respect as established by those decisions, and are' not disposed at this late day to disturb it.
It is further urged that section four, as construed by the courts below, would prevent mail-order houses .from using the mails for lawful *198 purposes, in the ordinary transaction of their business, and that would be an invasion of the right of the citizen to use the mails and of the general government to receive large revenues from a business recognized by it as lawful and equally legitimate under state laws. This objection, though plausible, we think is without force. No reason is perceived why it should be any more of a hardship for the mail-order people to pay respect to the laws of the states with whose citizens they desire to deal than other people. If the section as to other objections is a valid law, and we have found that it is, it would seem that the inconvenience visited upon a few large stores here and there would hardly afford a ground for holding it invalid. As to the loss of revenue to the general government it would seem sufficient to recall the Delamater case, supra, where the decision of the highest court of the land supports the power of the states to enact just such legislation.
Objection is urged that, as construed by the courts below, the act is unreasonable and oppressive. Courts are not concerned with the question of the wisdom or the usefulness of this class of legislation. All such questions are within the exclusive province of the law-making body, the general assembly. In many counties of the state, the most we understand, a majority of the people have shown by their votes approval of such measures and the general assembly has heeded this sentiment by, from time to time, perfecting such legislation with the hope if possible of fully accomplishing the purpose designed. The courts *199 will do their whole duty when they determine whether or not the particular act, in the provisions challenged, is or not within the competency of the law-making body, and if it be, then to give construction to the language, employed, as it is found in the statutes, and award judgment accordingly.
We are of opinion that the record shows that an offense has been committed by the plaintiff in error in violation of the fourth section of the act, and that the section thus offended against is a valid law.
The judgment of the circuit court will be

Affirmed.

Summers, C. J., Crew, Davis and Price, JJ., concur.