EL PUEBLO, DEMANDANTE Y APELADO, *v.* NOGUERAS, ACUSADO Y APELANTE.

Apelación procedente de la Corte de Distrito de San Juan, Sección 2ª., en causa sobre adulteración de leche.

No. 855.—Resuelto en diciembre 22, 1915.

JURISDICCIÓN—CONOCIMIENTO DE LOS DELITOS.—La jurisdicción correspondiente a los delitos, radica en la corte de distrito del respectivo distrito judicial dentro del cual se cometieren.

SALUD Y SEGURIDAD PÚBLICAS—LECHE ADULTERADA—ENVÍO POR FERROCARRIL AL COMPRADOR—AGENTES—JURISDICCIÓN.—Cuando en la persecución de un delito por vender u ofrecer en venta como pura leche de vaca adulterada, se demuestra que el acusado adulteró y vendió la leche de que se trata en el distrito de su residencia y la envió directamente por ferrocarril al comprador residente en otro distrito, debe concluirse que el delito quedó consumado en el distrito en que la leche fué adulterada y vendida o sea en el de la residencia del vendedor.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Martínez & Iriarte.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra sentencia de la Corte de Distrito de San Juan, Sección 2ª., por virtud de la cual A. Nogueras fué condenado a seis días de cárcel como autor de un delito de vender y ofrecer en venta leche adulterada, previsto y castigado en la ley número 59 de 1910, proveyendo lo necesario para castigar la adulteración de leche, ofrecerla o tenerla para la venta.

La acusación, en lo pertinente, dice así:

"El citado A. Nogueras, allá en uno de los días del mes de noviembre de 1914, en la ciudad de San Juan, que forma parte del distrito judicial de mismo nombre, ilegal, voluntaria y maliciosamente tenía y ofrecía en venta como pura leche de vaca adulterada."

La ley aplicable es como sigue: "Toda persona que adulterare o diluyere leche con la intención de ofrecerla a la venta o que causare o permitiere que se ofrezca en venta, y toda persona que la vendiere, ofreciere o tuviere en venta, será culpable de delito menos grave  *  *  *." Véase la Ley número 59 de 1910, antes citada.

Examinada la acusación en relación con la ley aplicable, se ve que se imputan al acusado dos de las formas previstas por la ley para la comisión del delito, a saber: las de vender y ofrecer en venta como pura leche de vaca adulterada, hechos que según la acusación, se realizaron dentro del Distrito Judicial de San Juan.

Veamos lo que demuestra la prueba:

Carlos Abella Blanco, inspector de alimentos, declaró que el 21 de noviembre de 1914 examinó la leche que de los pueblos de la isla llega a San Juan por ferrocarril, y tomó una muestra que venía de Arecibo, y que pertenecía al acusado, cuya muestra rotuló y entregó al Departamento. "Repreguntado por la defensa si había algún empleado del Sr. Nogueras que estuviera a cargo de esa leche, que estaban las personas a quie-

nes el Sr. Nogueras le tenía vendida la leche, o sea los encargados de recibirla. Contestando a preguntas del juez, dice que los envases venían cerrados, y para abrirlos, tuvo que decirle que los abriera a persona encargada de recibirlos.''

Rafael del Valle y Bienvenido Matienzo, Director y Auxiliar, respectivamente, del Laboratorio Químico, declararon que la muestra de leche del acusado fué examinada y resultó adulterada con agua.

Finalmente, el acusado Nogueras dijo: ''que remite leche a San Juan por ferrocarril directamente a las personas que la reciben, sin que vaya ningún empleado acompañándola; que no tiene agentes en San Juan, ni hay ninguna persona a quien directa ni indirectamente haya comisionado para que lo represente en el negocio; que la leche que él remite viene con precinto, una tira de lienzo y lacre, y que así siempre lo ha hecho.''

En su alegato la parte apelante señala como error fundamental, el cometido, a su juicio, por la corte sentenciadora al actuar sin jurisdicción en este caso, ya que, según el apelante, el delito se cometió en el territorio de la Corte de Distrito de Arecibo y nó en el de la de San Juan.

La cuestión suscitada es interesante y la hemos estudiado cuidadosamente. La ley de Puerto Rico sobre la materia es clara. El artículo 8 del Código de Enjuiciamiento Criminal prescribe que: ''La jurisdicción correspondiente a los delitos radica en la corte de distrito del respectivo distrito judicial dentro del cual se cometiere.''

El precepto constitucional sobre la materia, fué interpretado por la Corte Suprema de los Estados Unidos en el caso In re Palliser, 136 U. S. 257, así:

''El peticionario descansa en aquellas disposiciones de la Constitución de los Estados Unidos que declaran que en todos los procesos criminales el acusado tendrá el derecho de ser juzgado por un jurado imparcial del Estado y distrito en donde el crimen se hubiere cometido. Artículo 3, sección 2; enmiendas, artículo 6.

"Pero el derecho garantido por la Constitución no es un derecho a ser juzgado en el distrito donde el acusado reside, ni siquiera en el distrito en el cual se encontrara personalmente en la fecha de la comisión del delito, sino en el distrito 'en donde el crimen se hubiere cometido.' "   136 U. S. 265.

¿Es éste un caso en el cual pueda decirse que no obstante haberse comenzado la comisión del delito en un distrito, es lo cierto que se consumó en otro?   Si se hubiera demostrado que la leche se adulteró en Arecibo, pero en realidad de verdad se vendió por el acusado en San Juan, personalmente o por medio de un agente, la cuestión no ofrecería duda alguna. La Corte de Distrito de San Juan tendría jurisdicción sobre la materia.   Pero las pruebas practicadas no demuestran que la leche se vendiera en San Juan, sino en Arecibo, quedando el delito totalmente consumado fuera del Distrito Judicial de San Juan.

En una acusación presentada contra H. G. Hopson, se le imputó la comisión de un delito de venta de licores espirituosos e intoxicantes en el condado de Brooks, Estado de Georgia. La prueba demostró que un Sr. Gornto y otro llamado J. W. Hopson, como socios, se dedicaban a la venta de dichos licores en el condado de Lowndes, y que el último, o sea J. W. Hopson, tenía una tienda en el condado de Brooks, en la cual el acusado H. G. Hopson estaba empleado.   Varias personas residentes en el condado de Brooks enviaron órdenes por correo a Gornto, incluyendo con ellas el precio del licor pedido.   Estas órdenes fueron despachadas enviándose los licores por expreso a J. W. Hopson, quien informó a los compradores de la llegada de los artículos, habiéndolos ido a buscar los compradores y habiéndolos recibido de manos de dicho H. G. Hopson.

La causa llegó a la Corte Suprema del Estado, y al resolverla, dicha corte se expresó así:

"Es claro que ninguna de las ventas se completó en el condado de Lowndes, porque en ninguno de los casos se entregó el licor al

comprador en dicho condado. Si los artículos vendidos se hubieran remitido directamente a los compradores, el caso hubiera sido diferente; ya que la entrega al porteador, hubiera sido, de acuerdo con la ley, la entrega a los compradores.''

La jurisprudencia establecida por la Corte Suprema de Georgia en el indicado caso, fué resumida por la misma corte en la siguiente forma:

''Cuando un comerciante en un condado recibe de una persona en otro condado una orden por mercancías y las envía a su agente en ese condado para ser entregadas a quien remite la orden, lo que en efecto se hace, la venta se realiza en el último condado; y esto es así aunque la persona que ordene las mercancías las pague por adelantado y su nombre esté puesto en el paquete que contiene dichas mercancías al ser enviadas al agente del comerciante.'' 42 S. E. Rep. 412.

Véanse también los casos de *Duff* v. *Commonwealth,* 68 S. W. Rep. 390, y 54 Ohio St. 242.

Aplicando a los hechos de este caso la jurisprudencia citada, tenemos que llegar a la conclusión que dejamos establecida, esto es, que la venta se consumó por parte del acusado en Arecibo, ya que el acusado envió directamente por ferrocarril la leche a los compradores, debiendo considerarse que el ferrocarril actuaba como un agente de los dichos compradores. Véase 35 Cyc. 173.

Habiendo en consideración todo lo expuesto, opinamos que debe declararse con lugar el recurso establecido, revocarse la sentencia apelada y absolverse al acusado.

*Revocada la sentencia apelada y absuelto el acusado.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.