### HORWITZ et al. v. UNITED STATES.

### No. 6702.

Circuit Court of Appeals, Fifth Circuit.

Feb. 20, 1933.

Rehearing Denied April 1, 1933.

W. P. Hamblen and Phil D. Woodruff, both of Houston, Tex., and Lewis H. Jones, of Corpus Christi, Tex., for appellants.

H. M. Holden, U. S. Atty., of Houston, Tex.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

The indictment in this case is in thirteen counts. The first count was drawn under

section 37 of the Criminal Code (18 USCA § 88), and charges a conspiracy within the jurisdiction of the trial court to deliver and cause to be delivered by United States mail newspapers, circulars, letters, and instruments concerning a lottery and scheme dependent upon lot and chance, in violation of section 213 of the Criminal Code (18 US CA § 336); and to "bring and cause to be brought into the United States from the Republic of Mexico, papers, certificates and instruments, purporting to represent a ticket, share and interest in a lottery and similar scheme dependent upon lot and chance, for the purpose of disposing of same," in violation of section 237 of the Criminal Code (18 USCA § 387). After so charging, this count alleges that the "said defendants did operate Radio Station XED at Reynosa, Tamaulipas, Mexico, in conjunction with a lottery business. * * * Radio Station XED was used to promote and procure customers for the lottery business. For a consideration the purchaser of a lottery ticket would be given a chance to win a large prize. The lottery was a drawing for numbers; certain numbers would win certain prizes; the winning of a prize depended entirely upon a drawing." And finally, under the caption "Overt Acts," it was alleged that to effect the object of the conspiracy the defendants caused a letter concerning a lottery to be delivered by the United States mail to each of several named addressees, and that two of the defendants did, in San Patricio and Nueces counties, Tex., talk through the radios of named persons and invited them to send through the United States mail a certain amount of money "concerning a lottery." Each letter as well as each invitation so set out was described as a separate overt act. The other counts of the indictment, except the last, charged substantive offenses based upon the acts designated as overt acts in the first count. The last count charged as a substantive offense the second object of the conspiracy, that is to say, the bringing into the United States of written instruments or certificates purporting to represent interests in a lottery. Of the defendants, Will Horwitz, his wife Margarita Horwitz, Milton G. Hall, Manuel C. Guerra, and Manuel B. Gonzalez, were convicted on the first or conspiracy count. Only Horwitz and Guerra have appealed. They were also convicted on several of the substantive counts including the last, but the sentences they received are not greater than could have been imposed as punishment for the conspiracy. If therefore their convictions on the conspir-

acy count be upheld, it will be unnecessary to consider or pass upon the validity of the substantive counts or the sufficiency of the evidence to sustain them.

The demurrer of the appellants to the first count for duplicity because a conspiracy was alleged to commit two offenses, one denounced by section 213, and the other by section 237, of the Criminal Code, was properly overruled. Where the objects of a conspiracy are separate, it is not a good objection that the indictment charges more than was or could be proved, if what is well alleged constitutes an offense. Ford v. United States, 273 U. S. 593, 47 S. Ct. 531, 71 L. Ed. 793; Bailey v. United States (C. C. A.) 5 F.(2d) 437; Christiansen v. United States (C. C. A.) 52 F.(2d) 950.

On the evidence appellants contend that they were entitled to a peremptory instruction because, as they say, there was no proof, either that the conspiracy was entered into or that the overt acts alleged were committed, within the jurisdiction of the trial court. As to the conspiracy it is not denied that appellants and their codefendants operated Radio Station XED at Reynosa in Mexico, just across the boundary line between Mexico and the United States. There was testimony for the government tending to show not only that Horwitz and his wife and Hall agreed in Houston to conduct a lottery by radio at Reynosa, but also that after the lottery was in operation in Mexico Horwitz and his wife and Guerra deposited money to the credit of the lottery in a bank at McAllen, Tex., a few miles from Reynosa, and that checks against this deposit were drawn by Guerra and sent to payees who lived in the Southern District of Texas in payment of money won in the lottery drawings. The letters set out in the overt acts were deposited in the United States mail and reached their destination, but the postal authorities required the addressees to sign waivers, open the letters in their presence, and then to return them immediately. Information concerning the lottery and the drawings were broadcast from the radio station in Reynosa; there were no messages broadcast from any point in Texas. Horwitz testified in his own behalf. The only evidence for the government which he denied was that tending to show that he had entered into an agreement to conduct a lottery and use the United States mail in connection therewith in Houston. He frankly admitted that he had operated a lottery at Reynosa in Mexico; that funds were deposited in a bank at McAllen and drawn

against by Guerra by checks payable to winners in the lottery drawings who lived within the jurisdiction of the trial court; and that those checks were deposited for delivery and many of them were delivered by the United States mail to the persons to whom they were addressed. He further testified that the lottery was required to be and in fact was conducted by radio.

It makes nó difference whether the conspiracy was originally entered into in Houston, within the jurisdiction of the trial court, or in Mexico outside that jurisdiction. If it be conceded that in the beginning it was formed in Mexico, appellants and their associates brought it into the jurisdiction of the trial court, by depositing and withdrawing funds from the bank at McAllen, by causing letters and checks to be delivered by the United States mail, and by performing other acts in pursuance of it and to effect its object. Hyde v. United States, 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136; People v. Mather, 4 Wend. (N. Y.) 229, 21 Am. Dec. 122; Wing v. United States (C. C. A.) 280 F. 112. As to the overt acts, designated as such in the indictment, appellants contend that there was no delivery of any of the letters which it is alleged the defendants caused to be delivered, because only a temporary custody was permitted by the postal authorities, who would themselves have been subject to punishment under Criminal Code § 214 (18 USCA § 337) if they had made delivery. To emphasize the point it is argued that the postal authorities could not properly have been convicted under the evidence adduced of making actual delivery. And they contend as to the second set of overt acts, which charge that two of the defendants while in Texas talked through radios, that there was a variance between the allegations and the proof since it is undisputed that the announcements over the radio were made from the radio station in Mexico. It may be assumed that these objections to the proof relating to the overt acts listed as such under separate heading are good. It is of course true that under section 37 of the Criminal Code it is necessary to allege and prove an act to effect the object of the conspiracy. Such an act was sufficiently, though somewhat inartificially, alleged in that part of the first count of the indictment, immediately following the conspiracy charge, where it was alleged that a radio station was operated and used by the defendants to promote and procure customers for the lottery

business. The allegation referred to, and quoted above, manifestly formed no part of the unlawful agreement; it states what had been done, not what it was agreed should be done. It was the equivalent of an allegation that it was used to effect the object of the conspiracy; for the conspiracy was not only to perform the innocent act of using the mails but also to use them in relation to or concerning a lottery. The lottery was so intimately connected with the object of the conspiracy as to become a part of it. It follows therefore that an agreement to promote the lottery was at the same time an agreement to effect the object of the conspiracy. There is no magic in the statutory word "effect"; another word having the same meaning may be substituted for it. Dealy v. United States, 152 U. S. 539, 546, 14 S. Ct. 680, 38 L. Ed. 545. There can be no doubt that the operation of the radio station constituted an overt act in furtherance of the conspiracy. A lottery could not be and was not conducted without the radio station; it was the broadcasting from Reynosa that brought forth the use of the mails. And so there was sufficient averment and proof of an essential overt act. We have then a case in which, according to the undisputed evidence, a conspiracy was in existence within the jurisdiction of the trial court and an overt act was committed in furtherance of it in a foreign country. It is settled that "if the conspiracy be entered into within the jurisdiction of the trial court, the indictment will lie there, though the overt act is shown to have been committed in another jurisdiction, or even in a foreign country." Hyde v. Shine, 199 U. S. 62, 25 S. Ct. 760, 761, 50 L. Ed. 90. See, also, United States v. Britton, 108 U. S. 199, 2 S. Ct. 531, 27 L. Ed. 698; Dealy v. United States, supra.

Reversible error is not made to appear by any of the assignments, and the judgment is affirmed.

SIBLEY, Circuit Judge (concurring).

The indictment charges, and the evidence abundantly proves, that the appellants and others were operating a lottery just across the Mexican border, and advertising it in English and Spanish from a radio station by broadcasts in which the public was invited to send money by mail to them for chances in the lottery. Much business was continuously obtained from the United States in response to the broadcasts, money being sent in by mail and receipts for it sent back and checks to winners in letters posted in Mexico but addressed to persons in the Southern

District of Texas. There is no room to doubt and no denial that there was an intention that the United States mails be used in circumvention of 18 USCA § 336. The substantive counts under that section charging delivery of the letters containing receipts and checks fail because in each instance it was proved that the postmaster did not deliver them in the narrow sense that must properly be attributed to words in a criminal statute, but suspecting lottery inclosures he simply had the addressees to open the letters in his presence and read and return them. But no such narrow interpretation is necessary in the conspiracy count, which charged as overt acts that the conspirators caused these letters to be delivered to the addressees, for the overt act need not be in itself a crime. In a general sense the letters were delivered, though momentarily, to the addressees. But if the accurate word to be used is "exhibited," the variance is purely technical, occasioning the accused no surprise, and the real facts being well known and not in dispute there is no occasion for a new trial on that score. 28 USCA § 391. The real question is whether there is jurisdiction of the offense of conspiracy when everything that the indictment says was done happened while the conspirators were physically in Mexico. Whatever may have been true of common-law conspiracy, it seems to me that the federal statute introducing the overt act, as construed in the Hyde and Brown Cases in 225 U. S., to complete and perfect the crime with the result that the overt act for purposes of local jurisdiction carries constructive presence of all the conspirators where it was done, but leaves jurisdiction also where the conspirators in fact conspired, requires that where venue rests on the latter basis it is not enough to show that some one conspirator came into the jurisdiction and did some unalleged thing. If that thing is the basis of jurisdiction, it ought to be alleged as an overt act, that accused persons who were never physically in the country may know and defend against it. But as to an overt act that is alleged, constructive presence thereby is justly sustained. That act completes the crime of conspiracy where it was done, no matter where the conspiracy was previously made or carried on. It is authorized by all because it is to effect the object of the conspiracy. That it is done across an international line does not differentiate conspiracy from any other offense. If pistol or poison takes intended criminal effect from Mexico in the United States, the United States may punish if it can catch the criminals. The effect in the United States of the act done in Mexico draws to it jurisdiction to punish those who are responsible for it. It may properly be alleged as done in the United States. These mailed lottery receipts and checks are like bullets that hit their mark. In re Palliser, 136 U. S. 257, 10 S. Ct. 1034, 34 L. Ed. 514. They are clearly acts done in pursuance of this conspiracy and by authority of the conspirators. The radio communications in English were also clearly solicitations to misuse the United States mail intended to reach the people of the United States, and, although more like poison gas than bullets, I think their intended effect when accomplished in the United States constitutes an overt act there. Jurisdiction exists from the standpoint of international law. Venue in the Southern District of Texas exists under the Federal Constitution (Amendment 6), which requires prosecution where the crime was committed, not where the criminal was when he committed it. I concur in the affirmance.

HUTCHESON, Circuit Judge (concurring).

I agree that a case was fully made out under the conspiracy charge, and that no error as to it having been shown, the judgment should be affirmed. I am, however, more than a little in doubt that the allegations the opinion relies on as allegations of overt acts may be in law so treated, and I think I should say so. I concur in the affirmance because I have no doubt that the overt acts alleged as such were sufficiently proven. It may be that the letters were not so delivered as to constitute an offense under the substantive counts, though I believe they were. It may be that talking into the radios in Nueces county by means of a broadcast from Mexico, as alleged, would not constitute a substantive offense. It is not necessary that it should. An overt act may be in itself entirely legal. It is sufficient if it be an act done in the furtherance of a conspiracy. I think it cannot be doubted that it was overwhelmingly shown that the defendants did, as set out in the overt acts, cause letters to be delivered, and did talk in Nueces county into radios in furtherance of the conspiracy.