# Trials of Newspaper Personnel
# Accused of Disclosing Naval Secrets

It is probable that the newspaper personnel accused of violating the Espionage Act by disclosing naval secrets can each be tried in any district in which the newspaper containing the secrets was received by a subscriber or newsstand.

The newspaper personnel would be entitled to separate trials unless a conspiracy to violate the Espionage Act can be shown.

June 16, 1942

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

In an accompanying memorandum of today's date,[*] the substantive aspects of certain disclosures of naval information are discussed. A short statement of facts is there given.

This memorandum discusses the following questions:

(1) Assuming a violation of law by the reporter, the managing editor of *B* newspaper, the company publishing it, and the publisher, can they be tried in any district in which the newspaper was received by a subscriber or newsstand?

(2) Can these trials be combined?

(3) Assuming a violation of the law by the managing editors of *B* and *C* newspapers, and a conspiracy between them and *A*, the reporter, can all be tried jointly in a certain district in which subscribers to both *B* and *C* can be found? If no conspiracy exists?

The answers appear to be as follows:

(1) Each defendant can probably be tried in any district in which the newspaper was received.

(2) The trials will be separate, in the absence of proof of conspiracy.

(3) Assuming a conspiracy, the trial of all can be held jointly in a common district.

---

[*] Editor's Note: That memorandum opinion precedes this one (*Criminal Liability for Newspaper Publication of Naval Secrets*, 1 Op. O.L.C. Supp. 93 (June 16, 1942)).

## I. Problems of Venue; Place of Trial

Assuming a violation of the law by the reporter and his superiors—managing editor, publisher, and newspaper company—it is probable that each defendant can be tried (whether separately or jointly will be discussed below) in any district in which a copy of the newspaper containing the criminal dispatch was received by a subscriber or newsstand.

The Constitution of the United States provides that

> "The trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . . ," Article III, Section 2,

and that

> "In all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ," Amendment VI.

These constitutional provisions do not give a defendant a constitutional right to be tried only in the district of his residence or principal place of business. *Haas v. Henkel*, 216 U.S. 462 (1909). His right is to a trial in the district where the crime was committed.

It seems to be reasonably well established by the Supreme Court that a "crime," which involves a sequence of acts crossing district boundaries, is committed in any district in which any substantial act in the sequence took place. *Hyde v. United States*, 225 U.S. 347 (1911); *United States v. Lombardo*, 241 U.S. 73 (1915). The discretion of the Attorney General and the constant supervision of the courts are regarded as sufficient safeguards against double jeopardy and unnecessary multiplicity of suits.

The most significant act in the crime of "communicating" or "transmitting" a document relating to national defense to "any person not entitled to receive it" under section 1(d) of the Espionage Act[1] must be the actual presentation of the contents of such a document to the person not entitled to receive it. When such communication or transmission is effected through the medium of a newspaper, that act occurs only when the recipient of the newspaper has it in his control. The *factual* chain of events which constitute the *legal* crime begins of course when the reporter first illegally scans the forbidden document, but it does not end until the whole institutional apparatus of newspaper publication has deposited the finished paper in the hands of the subscriber or purchaser. To seize upon any one factual event in the crime chain—such as the physical rolling of the papers off a press— and to say that such an event only is "the crime" and that the crime is "committed" only at the locus of that event would be as unrealistic as it would be subversive of

---

[1] Act of June 15, 1917, ch. 30, § 1(d), 40 Stat. 217, 218, *codified at* 50 U.S.C. § 31(d) (1940).

the policy of the statute. It is not some physical step in the publishing process which is prohibited but the *communication* of defense information to unauthorized recipients. The fact that there may be unauthorized recipients in many districts only aggravates the crime. It would put an insuperable burden upon the government to require it to show which unauthorized recipients actually passed the information on to the enemy and, hence, to fix its venue there.

Direct case authority to support this reasoning is scant. Helpful analogies can, however, be found in cases involving the unlawful transmission of goods and fraudulent mail practices. Charles C. Montgomery, *Manual of Federal Jurisdiction and Procedure* § 1150 (4th ed. 1942). The famous old case of *In re Palliser*, 136 U.S. 257 (1890), which held that the offense of tendering a contract for the payment of money in a letter mailed in one district and addressed to a public officer in another, to induce him to violate his official duty, could be tried in the district in which the letter was received by that officer, is squarely in point. The opinion contains excellent supporting language.

Opposing authority is equally scant. The federal criminal libel cases are old, by lower courts, not numerous, and poorly reasoned. They have been often criticised. Justin Miller, *Handbook of Criminal Law* 495 (1934); Recent Cases, *Criminal Law—Jurisdiction—Locality of Publication of Libel*, 23 Harv. L. Rev. 309 (1910); Comment, *Copies of a Printed Criminal Libel as Separate Offenses*, 26 Yale L.J. 308 (1916–17). Many state court decisions are to the contrary. Annotation, *Venue of Action for Libel in Newspaper*, 37 A.L.R. 914 (1925). The leading case, *United States v. Smith*, 173 F. 227 (D. Ind. 1909), could easily be distinguished or discredited.

One section of the judicial code, 28 U.S.C. § 103, could be construed as relevant. This provides that:

> When any offense against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein.

Rev. Stat. § 731 (2d ed. 1878), 18 Stat. pt. 1, at 139 (repl. vol.), *as amended by* Act of Mar. 3, 1911, ch. 231, § 42, 36 Stat. 1087, 1100. If the argument above that a significant act of the chain "crime" was "committed" in the district where the newspaper was received is accepted, an equally plausible argument could be made under this section that the offense was "completed" in such district. The argument from the facts and from policy would be substantially the same.

For determining the place of trial, and allocating power between courts, the concept of "venue" serves the same function for different federal districts that the concept of "jurisdiction" serves for the states. State courts are—it should be noted by way of analogy—rapidly getting away from the naive notion that a "crime,"

involving a sequence of acts crossing state boundaries, is physically "located" on some one spot. Thus Mr. Berge observes:

> [T]he conclusion is irresistible that if the constituent acts of a given crime occur in more than one state, each such state has an equally valid claim to jurisdiction over the whole crime. Such extra-territorial elements should be frankly recognized by courts and no attempt should be made to cover them with legal fictions.

Wendell Berge, *Criminal Jurisdiction and the Territorial Principle*, 30 Mich. L. Rev. 238, 269 (1931).

## II. Separate Trials

Where two or more defendants are accused of the *same crime*, i.e., if they are conspirators, or principal and accessory, they may be tried together. Even here, however, the court may in its discretion order separate trials, upon proper motion. Where the crimes are different, though related in nature or linked by events, the defendants are entitled to separate trials, if the objection is seasonably raised. *See* Montgomery, *Federal Jurisdiction and Procedure* § 1238; William T. Hughes, *Federal Practice, Jurisdiction & Procedure* § 7084 (1931 & Supp. 1941).

In the instant case, unless the conspiracy theory is relied upon, the defendants would appear to be entitled to separate trials.

## III. Conspiracy

If a conspiracy to violate the Espionage Act can be shown (which does not appear probable on the facts now known to me), the defendants can be tried together in any district in which the conspiracy was formed or in which an act was done to effectuate the object of the conspiracy. Hughes, *Federal Practice* § 6849.

## IV. Questions of Policy

The newspapers usually stand together on questions affecting their common interest. The *locus* of a suit against reporters, editors and proprietors is a matter of major importance to the publishing trade. If it is established that suits based on libel or violations of the Espionage Act can be brought at any point at which even a single subscriber receives the publication, the trade would feel itself in grave jeopardy. Accordingly, an attempt to start a prosecution at a point remote from the place of publication might raise a nationwide outcry from the press, and prevent the public from reaching an understanding of the merits of the case.

OSCAR S. COX
*Assistant Solicitor General*
