**EISLER v. UNITED STATES.**

No. 9813.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 26, 1949.

Decided April 18, 1949.
Writ of Certiorari Denied June 27, 1949.
See 337 U.S. 958, 69 S.Ct. 1534.

EDGERTON, Circuit Judge, dissenting.

Messrs. David Rein, of Washington, D. C., and Abraham J. Isserman, of New York City, with whom Mr. Joseph Forer, of Washington, D. C., was on the brief, for appellant.

Mr. William Hitz, Assistant United States Attorney, of Washington, D. C., with whom Mr. George Morris Fay, United States Attorney, of Washington, D. C., was on the brief, for appellee. Mr Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, CLARK, and WILBUR K. MILLER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

While sojourning in this country, Gerhart Eisler, an Austrian national, executed under oath in New York City on September 5, 1945, and caused to be mailed to the Secretary of State in the District of Columbia, an application for permission to depart from the United States.

He was indicted in 1947 by a grand jury in the District of Columbia for knowingly making false statements in his application to the Secretary of State, with the intent "to induce or secure the granting of such permission" in violation of 22 U.S.C.A. § 223. Opinions of the District Court with reference to the case are United States v. Eisler, D.C.1947, 75 F.Supp. 634, and United States v. Eisler, D.C.1948, 75 F. Supp. 640. Convicted by a jury and sentenced to imprisonment for a term of from one to three years, Eisler appeals.

The appellant's first argument for reversal is that the trial court lacked jurisdiction because he executed the application in New York and caused it to be mailed there. Nothing happened in the District of Columbia except the delivery of the application to the Secretary of State. His crime, if any, was committed in New York, he says; and he cites United States v. Johnson, 1944, 323 U.S. 273, 65 S.Ct. 249, 250, 89 L.Ed. 236, in support of the contention. The Johnson case involved the unlawful *use* of the mails in shipping contraband articles to another state, and the Court held jurisdiction was restricted to Illinois because Johnson's "use of the mails" consisted of mailing the articles in Chicago. Here we are not concerned with mere use of the mails. The offense was not complete until the application reached the Secretary of State.[1] That venue was properly laid in the District of Columbia seems settled by In re Palliser, 1890, 136 U.S. 257, 10 S.Ct. 1034, 34 L.Ed. 514. There the Supreme Court said, 136 U.S. at page 266, 10 S.Ct. at page 1036:

"When an offence is committed by means of a communication through the post-office, the sender has sometimes, as appears by the cases cited for the petitioner, been held to be punishable at the place where he mails the letter. * * * But it does not follow that he is not punishable at the place where the letter is received by the person to whom it is addressed: and it is settled by an overwhelming weight of authority that he may be tried and punished at that place, whether the unlawfulness of the communication through the post-office consists in its being a threatening letter; * * * or a false pretense or fraudulent representation * * *."

Later in the opinion the Court said, 136 U.S. at page 267, 10 S.Ct. at page 1037:

"In the case before us, the offence charged being an offer of money, or a tender of a contract for the payment of money, contained in a letter mailed in New York and addressed to a postmaster in Connecticut, to induce him to violate his official duty, it might admit of doubt whether any offence against the laws of the United States was committed until the offer or tender was known to the postmaster and might have influenced his mind. But there can be no doubt at all that, if any offence was committed in New York, the offence continued to be committed when

---

[1] Cf. United States v. Freeman, 1915, 239 U.S. 117, 36 S.Ct. 32, 60 L.Ed. 172.

the letter reached the postmaster in Connecticut; and that, if no offence was committed in New York, an offence was committed in Connecticut; and that, in either aspect, the District Court of the United States for the District of Connecticut had jurisdiction of the charge against the petitioner. Whether he might have been indicted in New York is a question not presented by this appeal."

 On the authority of this leading case, we hold that venue lay in the District of Columbia.

Consideration of the appellant's remaining grounds for reversal requires reference to the false statements attributed to him by the grand jury. The indictment described them in this fashion:

"The said application contained statements which were fraudulent and fictitious in the following respects:

"(A) the defendant answered the following question:

" '23. State the names of all organizations, groups, societies, clubs, or associations of which you are or have been a member, or with which you are or have been affiliated', by writing 'None'; whereas in fact the defendant had been and was then a member of and was affiliated with the Communist Party, as he, the defendant, then and there well knew;

"(B) the defendant answered the following question:

" '18. State what names you have used, or have been known by, before and after you arrived in the United States', by writing only the words 'Gerhart Eisler', whereas in fact the defendant had used and had been known by the names 'Gerhart' (or otherwise similarly spelled), 'Edwards', 'Brown', 'Samuel Liptzen', 'Hans Berger' and 'Julius Eisman' (or 'Eiseman'), as he, the defendant, then and there well knew;

"(C) the defendant answered the following question:

" '7. Where have you resided, what has been your occupation, and who have been your employers, if any, during the past 10 years?', by stating as places of residence only 'Austria, France, Spain, since 1941

USA', whereas in fact the defendant resided in the United States in the years 1935 and 1936 for periods of time which were 'during the past 10 years' within the meaning of said question, as he, the defendant, then and there well knew;".

Appellant moved for a bill of particulars setting forth in detail the answers to these questions, among others:

"1. When, where and by what actions did defendant become a member of the Communist Party?

"2. When, where and by what actions did defendant become affiliated with the Communist Party, and what was the nature of the affiliation?"

In response, bills of particulars were filed in which the government promised to prove Eisler was a member of the Communist Party in Germany from about 1918 to about 1945, and in the same period was affiliated with the Communist organizations in Russia, Austria and China, and in the United States from about 1928 to about 1945. By requesting particulars concerning his alleged membership in and affiliation with the Communist Party, the appellant invited the widest scrutiny of his Communist activities. He insisted that the sluice gates of government proof be opened and he was overwhelmed by the flood which followed.

 In spite of this, the appellant claims prejudicial error because the prosecuting attorney outlined in his opening statement the broad sweep which his proof would take concerning Eisler's activities as a Communist and as an agent of the Communist International. He claims those statements were inflammatory, and strenuously complains of the admission of evidence to the effect that he was an agent of the "International". All this amounts to nothing more than saying the proof of guilt was so abundant as to be oppressive and prejudicial,—a novel conception we cannot accept.

 Appellant's next assignment of error is the denial of his motion to exclude all government employees from the jury. With respect to it, we need only to refer to our

recent decision in Dennis v. United States, 1948, 84 U.S.App.D.C. 24, 171 F.2d 986.

■■ The appellant's insistence that the evidence was insufficient to support the verdict is so obviously without basis as to require no discussion. But an interesting portion of his argument on this point should not go unnoticed. He says, "Government counsel never introduced any evidence to prove or identify any organization known as the Communist Party" and "did not introduce any evidence to indicate what he considered to be the connection, if any, between the Communist parties of these various countries and the Communist Party named in the indictment." We suppose the indictment used the term Communist Party in a generic sense. Be that as it may, however, the argument is overturned by the government's evidence which showed his affiliation with the Communist organizations of various countries, including the United States. It is common knowledge that the Communist Party, in whatever country it exists, is under the authority and control of the Party heads in the Soviet Union. Even the name of the organization known as "Communist International" indicates it is the overlord of Communists everywhere.

· Nor is it necessary to discuss at length the appellant's assertion that the questions which he is said to have answered falsely are "fatally ambiguous." . The fallacy of the statement is apparent from the following quotation from Eisler's brief:

"The first question in the indictment is 'State the names of all organizations, groups, societies, clubs, or associations, of which you are or have been a member, or with which you are or have been affiliated.'

"This question is completely ambiguous. What is a group, a society, or an association? What is an organization?"

■ It was not until he was indicted that Eisler regarded this question as ambiguous. When he answered it in filling out his application he wrote the word "None". Had he then been in doubt as to the meaning of the words in the question, he could have addressed the State Department and asked for definitions.

He complains the application did not define the word "affiliation" and notes that the Supreme Court, in Bridges v. Wixon, 1945, 326 U.S. 135, 65 S.Ct. 1443, 1447, 89 L.Ed. 2103, had great difficulty in defining it. There the Court concluded that affiliation "imports * * * less than membership but more than sympathy." Eisler's answer to the question was in effect that he did not consider himself affiliated with the Communist Party in the sense in which the word had significance to him. The record abundantly shows he had something more than sympathy. His counsel repeatedly referred to him as a German Communist and all the evidence demonstrated his affiliation with that Party, in the United States and elsewhere, in any sense in which that word can be understood by anybody.

Eisler's use of many different names at many different times was amply proved, and that he was in the United States for a period of about five months in 1935 and 1936 was indisputably shown, although he represented to the Secretary of State that in the last ten years his places of residence had included the United States only since 1941.

We have examined all the other grounds for reversal pressed upon us by the appellant but do not regard them of sufficient moment to require discussion. The record seems to us to be free from prejudicial error.

Affirmed.

EDGERTON, Circuit Judge (dissenting).

I think the appellant was subject to trial only in New York, where he made his statements and his agent mailed them. The court relies on In re Palliser, 136 U.S. 257, 10 S.Ct. 1034, 34 L.Ed. 514. That case was decided in 1890. United States v. Johnson was decided in 1944. In the Johnson case the Supreme Court held that "If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it."

323 U.S. 273, 276, 65 S.Ct. 249, 251, 89 L. Ed. 236. A dissenting opinion cited In re Palliser. The Johnson decision means that Eisler did not even "use the mails" in the District of Columbia. A fortiori he did not "make any * * * statement" there.

In my opinion an added reason for reversal is that the court permitted three employees of the United States[1] to serve as jurors.

The indictment shows that its paragraph (A) deals with question 23 of the application, (B) with 18, and (C) with 7. This transposition makes it the head and front of the indictment that the appellant's answer "None" to question 23 was fraudulent in that he "had been and was then a member of and was affiliated with the Communist Party." The indictment does not allege that he was a most important and disruptive Communist, but this was urged throughout the trial. The prosecutor in his opening statement told the jury that the appellant "was a representative of the Comintern" and "that his real purpose for coming to this country * * * was the purpose of disrupting the economy of the United States, to further the ends of Moscow."[2] There was testimony that he had been "the head of the Comintern" and was to direct the Communist Party in this country. He was represented as having taken a leading part in Communist activities here and abroad. The prosecutor in his closing argument told the jury that the appellant was "anti Government."[3]

Government employment alone does not disqualify a juror in a prosecution for larceny, United States v. Wood, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78, or violation of the narcotics laws. Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201. But government employment is not commonly known to be endangered by sympathetic association with thieves or drug peddlers. It is commonly known to be endangered by sym-

pathetic association with Communists. Government employees are therefore anxious, in various degrees according to their temper and circumstances, to avoid seeming to sympathize with Communists. Acquittal sometimes indicates, and is often thought to indicate, that the jury sympathized with the accused. It is therefore prudent for government employees to convict an alleged Communist and imprudent to acquit him. For government employees to acquit this alleged Communist leader would have been particularly imprudent. Trial by jurors whose personal security will either actually or apparently be promoted by conviction and endangered by acquittal is not "trial by an impartial jury" and is not due process of law.

Even in the narcotics case four members of the Supreme Court dissented. They said concerning government employees. "Of late years, the Government is using its power as never before to pry into their lives and thoughts upon the slightest suspicion of less than complete trustworthiness. It demands not only probity but unquestioning ideological loyalty. A government employee cannot today be disinterested or unconcerned about his appearance of faithful and enthusiastic support. * * * Even if we have no reason to believe that an acquitting juror would be subjected to embarrassments or reprisals, we cannot expect every clerk and messenger in the great bureaucracy to feel so secure as to put his dependence on the Government wholly out of mind. I do not doubt that the government employees as a class possess a normal independence and fortitude. But we have grounds to assume also that the normal proportion of them are subject to that very human weakness * * * which leads men to '* * * crook the pregnant hinges of the knee where thrift may follow fawning.'" Frazier v. United States, 335 U.S. 497, 515, 69 S.Ct. 201, 210.

---

[1] A fourth juror was an employee of the District of Columbia.

[2] The court instructed the jury not to consider whether this was the purpose of the leaders of the Communist Party.

[3] I do not consider whether some of the prosecutor's statements and the admission of some of the testimony amounted to prejudicial error.

Although the Court did not think such considerations controlling in the narcotics case, nothing in the opinion of the Court suggests that they are not controlling here. I think the opinion of the Court affirmatively shows that they are controlling. It quotes these words among others from the larceny case: " 'We think that the imputation of bias simply by virtue of governmental employment, without regard to any actual partiality growing out of the nature and circumstances of particular cases, rests on an assumption without any rational foundation. * * * In dealing with an employee of the Government, the court would properly be solicitous to discover whether, in view of the nature or circumstances of his employment, or of the relation of the particular governmental activity to the matters involved in the prosecution, or otherwise, he had actual bias, and, if he had, to disqualify him.' " Frazier v. United States, 335 U.S. 497, 509-10, 512-513, 69 S.Ct. 201, 208. "Actual bias" includes "not only prejudice in the subjective sense but also such as might be thought implicitly to arise" from the circumstances of a particular case. Ibid., 335 U.S. at page 511, note 19, 69 S.Ct. at page 208. It is an understatement to say that prejudice might be thought implicitly to arise from the circumstances of this case.