**MORFORD v. UNITED STATES.**

No. 9854.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 28, 1949.

Decided June 13, 1949.

---

Mr. David Rein, Washington, D. C. with whom Mr. Abraham J. Isserman, Los Angeles, Cal. appeared on the brief, for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, Washington, D. C. with whom Mr. George Morris Fay, United States Attorney, Washington, D. C. appeared on the brief, for appellee. Mr. Sidney S. Sachs, Assistant United States Attorney, Washington, D. C. also entered an appearance for appellee.

Before CLARK and WILBUR K. MILLER, Circuit Judges, and GEORGE C. SWEENEY, District Judge, sitting by designation.

WILBUR K. MILLER, Circuit Judge.

Richard Morford appeals from a judgment of the United States District Court for the District of Columbia sentencing him to three months imprisonment and imposing a fine of $250.00 for violating 2 U.S.C.A. § 192, 52 Stat. 942, which is as follows:

"§ 192. Refusal of witness to testify. Every person who having been summoned

as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months."

The first of the indictment's two counts charged that on March 6, 1946, Morford refused to produce to the House Committee on Un-American Activities records of the 1945 receipts and disbursements of the National Council for American-Soviet Friendship, Inc., although he had been summoned to do so. The second count accused him of refusing to give the names of his organization's publications committee who had prepared and edited a publication called the "Reporter". He was convicted on both counts.

Undisputed evidence showed he had in his possession the information sought by the Committee, and that he refused to furnish it. Not only did Morford tell the Committee he would not produce it; he filed with that body as exhibits a resolution of his Board of Directors directing its staff "to resist to the maximum limit permissible under the law, the production of the books and records of the Council * * *", and a letter to a member of the Committee from the chairman of the National Council which began thus:

"The National Council of American-Soviet Friendship, by unanimous vote of its Board of Directors, has decided not to accede to the surprising request of the House Committee on Un-American Activities that it be permitted to send in investigators to examine the organization's books and records."

The letter was in answer to the Committee's offer to send its investigators to the Council's office in New York to obviate any inconvenience to it which might be caused by bringing its books and records to Washington.

Thus the evidence showed a deliberate, studied, admitted refusal to furnish the requested information, exactly as charged in the indictment. The appellant says there was no criminality in the refusal because, as he contends, "* * * the government failed to prove that the documents subpoenaed and the question asked were pertinent to any matter of inquiry committed to the Committee by Congress." Upon this contention he dwells at length and relies heavily for reversal.

The "matter of inquiry committed to the Committee" by House Resolution No. 5 of the 79th Congress was the investigation of "* * * the diffusion within the United States of subversive and un-American propaganda that is instigated from foreign countries or of a domestic origin and attacks the principle of the form of government as guaranteed by our Constitution. * * *" In Barsky v. United States, 83 U.S.App.D.C. 127, 167 F.2d 241, 244, we held that to be a valid authorization.

Obviously the first step in an investigation authorized by House Resolution No. 5 is to determine whether the propaganda being diffused is in fact subversive in the sense of the term as used in the Resolution.

The National Council of American-Soviet Friendship stated one of its objectives as being "* * * to take specific action against anti-Soviet propaganda aimed at dividing the United Nations." That purpose may have been innocent enough in itself; but it was implemented by a flood of propaganda pro-Soviet in character, consistently critical of the foreign policy of the United States. This printed propaganda was in the hands of the Congressional Committee before the issuance of the subpoena for Morford. The National Council's unstinted praise of the communistic regime in Russia, and its comparison of Soviet official behavior with that of the United States to the disparagement of the latter, led logically to the Committee's conclusion that here was such strong indication of an attack on the *principle* of

our form of government as to justify inquiry.

Power to investigate the diffusion of subversive propaganda would be sterile indeed if it did not include the right to investigate the person or organization engaged in diffusing it. Having properly decided the literature before it was of the nature described in the Resolution, the Committee had the authority to investigate its issuer, the National Council for American-Soviet Friendship.

If inquiry was justified, as we think it was, there can be no quarrel with the form the inquiry took. As to the Committee's request for the names of the persons who produced the sometimes shocking publication called the "Reporter", it is enough to note that "Personnel is part of the subject", as we said in Barsky v. United States, supra. Equally pertinent was the Committee's request for the records of receipts and disbursements, as in such circumstances it is of urgent importance that Congress know where such an organization gets its money, and exactly what it does with it. The District Court's finding that, as a matter of law, the questions were pertinent was abundantly justified.

The appellant next complains that the indictment is ambiguous because the statute under which it was drawn furnishes no standard by which a witness can determine whether a question is pertinent. Authoritative determination of pertinency is a function of the court; and the witness acts at his peril in refusing to answer. In Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692, the Supreme Court had before it a prosecution under the statute involved here.[1] The Court said, 279 U.S. at page 298, 49 S.Ct. at page 273, 73 L.Ed. 692:

"The question of pertinency * * * was rightly decided by the court as one of law. It did not depend on the probative value of evidence."

Later in the opinion, the Supreme Court added, 279 U.S. at page 299, 49 S.Ct. at page 274, 73 L.Ed. 692:

"* * * The gist of the offense is refusal to answer pertinent questions. No moral turpitude is involved. Intentional violation is sufficient to constitute guilt. There was no misapprehension as to what was called for. The refusal to answer was deliberate. The facts sought were pertinent as a matter of law, and section 102 made it appellant's duty to answer. He was bound rightly to construe the statute. His mistaken view of the law is no defense."

As in the Sinclair case, there was no misapprehension here as to what was called for. If by his complaint of lack of standards, the appellant means he was furnished with no guide by which he could decide for himself whether the propaganda diffused by his organization was in fact subversive under House Resolution No. 5, the complaint is easily answered. The Resolution authorized investigation into propaganda which attacks the principle of our constitutionally-guaranteed form of government. It is difficult to imagine how the standard could be further particularized, or how the test could be misunderstood. The National Council's literature either did or did not attack the principle of our form of government. It was not necessary to justify inquiry that there be an attack on our government, or an advocacy of its violent overthrow; enough if the *principle* of our form of government were attacked.

As to whether such an attack was made, Morford could not have been in doubt unless he was grossly obtuse. Of course, the National Council was not so crass as to say, "We hereby attack the principle of the form of government guaranteed by our Constitution." Subversive propaganda is more subtle than that. But sometimes, as here, it is so bold that he who runs may read. If his obtuseness caused Morford in good faith to suppose the Council's literature was innocent, he is not thereby excused for refusing to answer the Committee's questions, for we have already pointed out that he acted at his peril in personally deciding there was no attack

[1] The statute under consideration in the present case is substantially the same as that discussed by the Supreme Court in the Sinclair case although it has been slightly amended.

upon the principle of our form of government in the pro-Soviet propaganda which was being sent out.

Error is further charged in the court's refusal to permit the appellant to prove that "* * * when the subpoena was issued against the defendant the House Committee on Un-American Activities had already passed judgment on the National Council of American-Soviet Friendship and was seeking to obtain names of persons participating in its activities and supporting it financially and otherwise, for the sole purpose of adding such names to its blacklist and to facilitate the committee's efforts to destroy the effectiveness of the National Council of American-Soviet Friendship in its advocacy of American-Soviet Friendship by placing undue burdens upon such continued advocacy."

 This assignment of error charges the Committee was not acting in furtherance of a legislative purpose in seeking the information which Morford refused to give. It is held, however, that a legitimate legislative purpose is presumed when the general subject of investigation is one concerning which Congress can legislate, and when the information sought would materially aid its consideration. McGrain v. Daugherty, 273 U.S. 135, 177–178, 47 S.Ct. 319, 71 L.Ed. 580, 50 A.L.R. 1. That presumption arises here, and it cannot be rebutted by impugning the motives of individual members of the Committee.

We think it unnecessary to prolong this opinion by discussing in detail the appellant's argument that the subpoena described in the first count of the indictment was in violation of the Fourth Amendment; that it was error to refuse him access to the confidential files of the Committee other than the material therefrom adduced by the government in support of pertinency; and that the trial court erred in not excluding government employees from the jury and in refusing to ask prospective jurors some of the questions which he requested the court to ask. Suffice it to say that we have examined these contentions with care and have concluded that the trial court did not err in any of those respects.

Affirmed.