## UNITED STATES v. RALEY.

### Cr. No. 1748–50.

United States District Court
District of Columbia.

April 3, 1951.

George Morris Fay, U. S. Atty., Charles B. Murray, Asst. U. S. Atty., Washington, D. C., for plaintiff.

David Scribner, New York City, Allan R. Rosenberg, Washington, D. C., for defendant.

MORRIS, District Judge.

This defendant was charged in an indictment of eleven counts with violation of Title 2 U.S.C.A. § 192, in that, having appeared before a duly created sub-committee of the Committee on Un-American Activities of the House of Representatives, he was asked certain questions pertinent to the

question then under inquiry by said Sub-Committee, and did refuse to answer said questions. It is not necessary here to discuss several defenses asserted in a motion to dismiss the indictment, as said motion has heretofore been denied by this Court, acting through Judge Kirkland, and I do not consider such questions open for further consideration in this case. Upon plea of not guilty, and jury having been waived, a trial was had upon the merits.

I am convinced that the Sub-Committee was legally constituted and the questions asked were pertinent to the inquiry. With respect to count 8, the Government concedes that the defendant was not permitted to state why he considered the question there involved to call for an incriminating answer. The Government concedes that counts 9, 10 and 11 are not supported by the evidence, because they are not on their face innocent and, therefore, no burden lay on the defendant to show special circumstances why the answers called for would be incriminating. With respect to all other counts, except count 2, the Government concedes that the claim of privilege against self-incrimination was sufficiently asserted by the defendant. With respect to count 2, the Government insists that such claim was not clearly made, and any determination that the privilege was claimed with respect to that count must depend upon whether its association with the questions as to which the claim of privilege was clearly made is such as to import that claim of privilege to the question involved in the second count. With respect, then, to counts 1 to 7, inclusive, it is the contention of the Government that the questions are innocent on their face and, therefore, a claim of privilege under the provision of the Fifth Amendment of the Constitution should not be allowed, unless the defendant showed some tangible and substantial probability that his answers to such questions would tend to incriminate him. As no such showing was made by the defendant it is, therefore, insisted that he is guilty of contempt in failing to make answers. The defendant insists that he did clearly assert his claim of privilege under the Fifth Amendment, and that, in the circumstances,

there was no duty on him to show that the answers to such questions would be incriminating. He, therefore, asserts that he should not have been required to make answers to such questions, and that he is not guilty of contempt in refusing to do so. This is the substantial issue to be determined by the Court.

 The questions here involved relate principally to whether or not the defendant knew certain persons. Obviously, the privilege of refusing to answer questions on the ground that such answers might tend to incriminate a witness may not be used as a subterfuge to avoid giving information to a legally constituted committee or sub-committee of Congress when such information is pertinent to the question being investigated by such congressional body. The privilege may only be asserted when there is reasonable apprehension on the part of the witness that his answers would furnish some evidence upon which he could be convicted of a criminal offense against the United States, or which would lead to a prosecution of him for such offense, or which would reveal sources from which evidence could be obtained that would lead to such conviction, or to prosecution therefor. Chief Justice Marshall, sitting on circuit, in the trial of United States v. Burr, 25 Fed.Cas. 38, at page 40, No. 14,692e, in connection with the claim of privilege by one Willie, secretary to Aaron Burr, said: "When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims. It follows necessarily then, from this statement of things, that if the question be of such a description that an answer to it may or may

not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact."

In the case of Counselman v. Hitchcock, 142 U.S. 547, at page 564, 12 S.Ct. 195, at page 198, 35 L.Ed. 1110, at page 1114, the Supreme Court, speaking through Mr. Justice Blatchford, in considering whether Section 860 of the Revised Statutes removes the protection of the constitutional privilege against self-incrimination, said:

"That section must be construed as declaring that no evidence obtained from a witness by means of a judicial proceeding shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture. It follows that any evidence which might have been obtained from Counselman by means of his examination before the grand jury could not be given in evidence nor used against him or his property in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture. This, of course, protected him against the use of his testimony against him or his property in any prosecution against him or his property, in any criminal proceeding, in a court of the United States. *But it had only that effect. It could not, and would not, prevent the use of his testimony to search out other testimony to be used in evidence against him or his property, in a criminal proceeding in such court. It could not prevent the obtaining and the use of witnesses and evidence which should be attributable directly to the testimony he might give under compulsion, and on which he might be convicted, when otherwise, and if he had refused to answer, he could not possibly have been convicted.*

"*The constitutional provision distinctly declares that a person shall not 'be compelled in any criminal case to be a witness against himself,' and the protection of section 860 is not coextensive with the constitutional provision.*" [Emphasis supplied] [1]

█ It is contended by the Government that an answer that the defendant did not know the persons about whom inquiry was made could not possibly incriminate him. It is conceded that the answer that he did know such persons, or certain of them, might under some circumstances be incriminating, insisting, however, that it was the duty of the defendant in such circumstances to explain why such answer would be incriminating. In so far as that contention relates to the situation in this particular case, the answer may be found in the setting in which the questions were asked and the privilege claimed. The testimony of this defendant before the Committee was taken at hearings which extended over a period from July 12th through the 15th, 1950, and were resumed August 8th, 1950. The defendant's testimony was taken on July 14th, numerous witnesses having testified previously and some subsequently. The transcript of the proceeding before the Committee, particularly with reference to examination of this defendant, shows that certain witnesses identified him as a member of the Communist Party, active in its affairs, and actively engaged with other members of the Communist Party in furthering its organization. The testimony by other witnesses showed that every one of the persons, concerning whom the questions here involved were asked, were members of or affiliated with the Communist Party. With federal statutes then in effect, making it a criminal offense to do the acts, to have the affiliations, or to conspire with others in the doing of such acts, and with numerous other witnesses testifying that this defendant had been thus engaged, it cannot reasonably be doubted that the de-

1. This decision is quoted to show that not only evidence, but testimony as to sources of evidence, are protected by the Fifth Amendment. Section 860 of the Revised Statutes has since been repealed, but its construction here is significant as Title 18 U.S.C.A. § 3486, in substantially the same terms relates to testimony of witnesses before congressional committees and sub-committees. See U. S. v. Bryan, 339 U.S. 323, at page 335, 70 S.Ct. 724.

**498**

fendant had good ground to apprehend that he would be prosecuted therefor. Blau v. U. S., 340 U. S. 159, 71 S.Ct. 223. In any prosecution in which he be charged with conspiracy with those concerning whom he was asked, it would obviously be relevant and important evidence that he knew them, and that they knew him. It is beside the point that such fact could probably be readily established by the testimony of others. The crux of the question is that he could not be compelled or coerced in admitting that he knew them, and revealing the source from which evidence might be obtained that could be used against him in any criminal prosecution. A witness ought not to be required to make an incriminating answer, and thus be put to the hazard of losing the right to claim privilege as to further questions which would elicit incriminating answers. See Rogers v. U. S., 71 S.Ct. 438. While it may be that, in certain circumstances, a witness should explain why an answer to an apparently innocent question might tend to incriminate him, certainly no such explanation is necessary to support a claim of privilege when testimony before the Committee is such as to make such explanation evident.

█ Where the claim of privilege is made with respect to numerous questions asked a witness, it should be considered to apply to a question asked in connection with the questions to which he has made claim of privilege when he declines to answer such question without making it clear that he is waiving the claim of privilege with respect to such question he declines to answer.

Much said in comment in connection with the judgment rendered this day in the case of United States v. Fitzpatrick, D.C., 96 F.Supp. 491, has equal application to this case in so far as it relates to the proper and limited function of a court with respect to the congressional power of investigation. Such comment will, therefore, not be repeated here.

For the reasons stated, I am of the view that the witness did claim privilege under the Fifth Amendment of the Constitution respecting the questions here involved, and that, in the circumstances, he should not have been required to answer such ques-

tions, and, therefore, a failure to make answer to such questions was not a violation of Title 2 U.S.C.A. § 192. The judgment of the Court is that the defendant is not guilty.