## UNITED STATES v. FITZPATRICK.

### Cr. No. 1743–50.

United States District Court
District of Columbia.
April 3, 1951.

492

George Morris Fay, U. S. Atty., Charles B. Murray, Asst. U. S. Atty., Washington, D. C., for plaintiff.

David Scribner, New York City, Allan R. Rosenberg, Washington, D. C., Arthur Kinoy, New York City, David Rein, Washington, D. C., for defendant.

MORRIS, District Judge.

This defendant was charged in an indictment of seven counts with violation of Title 2 U.S.C.A. § 192, in that, having appeared before a duly created sub-committee of the Committee on Un-American Activities of the House of Representatives, he was asked certain questions pertinent to the question then under inquiry before said Sub-Committee and did refuse to answer said questions. An attack was made upon the indictment upon several grounds which are not necessary here to discuss, as they were disposed of adversely to the defendant by this Court acting through Judge Kirkland. Thereupon, upon plea of not guilty, and jury having been waived, a trial was had upon the merits.

That the Sub-Committee was legally constituted and the questions asked were pertinent to the inquiry sufficiently appear. With respect to count 7, the Government concedes that the answer of the defendant, to the effect that he did not know, removes the necessity for a consideration of that count. It is conceded by the Government that the remaining counts relate to ques-

tions which are criminatory, but it is insisted that the defendant did not sufficiently claim the privilege, accorded to him under the Fifth Amendment to the Constitution, to decline to answer such questions on the ground that they might tend to incriminate him. The defendant insists that he did claim such privilege and, therefore, his failure to answer such questions could not properly subject him to a conviction of contempt for failure to make answer.

██ The transcript of the proceedings before the Committee particularly with reference to the examination of this defendant shows that the defendant claimed the right to refuse to answer these questions upon the ground that he was protected in so doing "by the First Amendment to the Constitution, supplemented by the Fifth Amendment." It is certainly true, as the Government asserts, that the defendant before the Committee insisted that the Committee had no right to inquire of him concerning the matters to which the questions related. He did so persistently and insolently, and he did not in any of such discussions use the term "that he refused to answer any of such questions on the ground that they would tend to incriminate him." Now, whatever may have been thought to have been the effect of the First Amendment upon the right of a congressional committee to make inquiries relating to the activities, affiliations, and associations of a witness, in the light of the Josephson case,[1] in the Second Circuit, and the Barsky case,[2] in our own Circuit, there can be no possible question in these two jurisdictions, if indeed there can be in any other, that the First Amendment does not preclude the Committee from asking the questions here involved, nor does it justify the defendant in refusing to answer them. But this misapprehension on the part of the defendant in no way vitiates his right to the protection under the Fifth Amendment, if he sufficiently made such claim.

██ The Fifth Amendment to the Constitution provides, among other things, that "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." The other provisions of that Amendment obviously have no relation to this controversy, and the provision mentioned is the one that has been construed to justify a witness in any proceeding in declining to answer any question that would tend to incriminate him, or expose him to prosecution for crime. There can be no doubt that this protection extends to a witness testifying before any judicial, congressional or administrative body of the United States Government, although, apparently, there has been misapprehension on the part of some that it does not. The use, therefore, by the defendant of the term "Fifth Amendment" could only have reference to this provision therein, and, unless by some explicit statement that he was not claiming the protection of that provision of the Constitution, it would seem sufficient to put the Committee on notice that he was asserting such claim.

██ The power of the Congress to conduct investigations by and through its committees, or otherwise, is one essential to the performance of the legislative function and certain other functions that are committed to it by the Constitution. It derives from ancient origin, and was well recognized in the Parliament of England and the legislative bodies of the several colonies and states before the Constitution was drafted. This power must have latitude to enable the Congress, not only to legislate, but to determine when legislation is not necessary; validity of its inquiry is not measured by the same yardstick as the validity of the legislation which it does enact. So, within its constitutional powers and limitations, the right of Congress to exercise this power of investigation must be upheld by the judicial branch of the Government, and unlawful attempts to frustrate it must be effectively dealt with by the courts. That this has been done with vigor and effect is abundantly shown in the volumes of re-

1. United States v. Josephson, 165 F.2d 82, certiorari denied, 333 U.S. 838, 68 S.Ct. 609, 92 L.Ed. 1122.

2. Barsky v. United States, 83 U.S.App. D.C. 127, 167 F.2d 241, certiorari denied, 334 U.S. 843, 68 S.Ct. 1511, 92 L.Ed. 1767.

ported cases which relate to this subject. It is equally the duty of the courts, however, when called upon to uphold and enforce this power of investigation, to determine whether or not a constitutional limitation justifies a witness in refusing to answer a question propounded to him. Of course, it is not to be supposed, nor indeed is it necessary or desirable, that the hearings by a congressional committee be conducted with the conventional and traditional formalities of a trial in a court of law; nor, indeed, are such procedures desirable in the conduct of an administrative hearing; but, informality of procedure must not be permitted to endanger the protection of constitutional rights. There is just as heavy a duty upon any organ of the Government, congressional, executive, or judicial, to observe constitutional limitations as to perform diligently and effectively the tasks committed to them by the Constitution and legislation passed pursuant thereto. It is quite sufficient if the procedure employed is such "which affords quick and well-informed action, grounded upon the fundamentals of fair play." Upon this principle, and indeed even in the more formalized procedures of a court, all it seems to me that is necessary to constitute the assertion of a claim of privilege under the provisions of the Fifth Amendment of the Constitution would be that which is necessary to put the tribunal upon notice that such claim was made. I do not think any particular words are necessary. Surely one is not to be deemed to have waived the privilege if he does not use the words themselves as contained in the Fifth Amendment, which have been construed in many adjudicated cases in language different from those words, or the language which courts have used in construing such Amendment. Where a witness, such as the defendant here, has claimed the protection of the Fifth Amendment, and that in a setting in which he has been denounced, by other witnesses testifying, as a communist, where testimony by other witnesses, if believed, shows that he has been active in organizing and directing a communist organization, where the statutes then in force make it a criminal offense to do such things, and where prosecutions have been instituted against those who are charged with doing them, it seems to me to be clear that the Committee was put on ample notice that the defendant apprehended that the answers to the questions involved in this indictment would furnish information which could be used in the prosecution of him in a criminal case under existing federal statutes, and for that reason, as well as for other reasons which were not well founded, declined to answer the questions. Blau v. United States, 340 U.S. 159, 71 S.Ct. 223.

It clearly lies within the power of Congress, when information is needed by the Congress for its constitutional purposes, to secure that information, even though it would reveal that the witness is guilty of a criminal offense, by providing complete immunity to such witness when it is deemed that the information sought is relatively more important in the public interest than punishment of the witness for the crime. The Congress has done this with respect to numerous administrative agencies of the Government; indeed it did so in a limited way with respect to witnesses testifying before congressional committees, 18 U.S.C.A. § 3486, as it also did with respect to witnesses in judicial proceedings, Section 860 of the Revised Statutes, since repealed. But, as these limited statutes of immunity do not give the full protection afforded by the Fifth Amendment as do the statutes of immunity respecting witnesses before numerous administrative agencies, they afford no basis for compelling a witness to testify as to incriminating matters. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110. See U. S. v. Bryan, 339 U.S. 323, at page 335, 70 S.Ct. 724. Such safeguards as Congress thinks proper could be provided against any improvident use of such immunity. Certainly there should be no barrier to information which the Congress needs in the public interest; but, certainly this information should not be had at the expense of the American tradition that no one should be prosecuted for, or convicted of, crime upon confessions coerced from him, or testimony which he has been compelled to give. There are ample ways, within that tradition, with diligent investi-

gation, upon testimony of others and voluntary statements of the accused, of bringing guilty persons to justice.

As the defendant cannot be found guilty of contempt in refusing to answer the questions here involved, unless beyond a reasonable doubt he failed sufficiently to claim the privilege which would jusify his refusal to answer such questions, the judgment of the Court is that he is not guilty.